**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
**www.flmb.uscourts.gov**

| | |
|---|---|
| In re ) | |
| ) | Case No. 6:11-bk-08951-KSJ |
| SAMSON OBINWA, ) | Chapter 7 |
| ) | |
| Debtor ) | |
| _____ ) | |
| ) | |
| SAMSON OBINWA, ) | |
| ) | Adversary No. 6:11-ap-00218-KSJ |
| Plaintiff ) | |
| vs. ) | |
| ) | |
| UNITED STATES OF AMERICA ) | |
| INTERNAL REVENUE SERVICE, ) | |
| ) | |
| Defendant ) | |
| _____ ) | |

**MEMORANDUM OPINION**
**GRANTING IRS'S MOTION FOR SUMMARY JUDGMENT**

The debtor/plaintiff Samson Obinwa owes almost $300,000 in taxes, penalties, and interest for failing to pay in full his tax liabilities for years 1997, 2000-2004, and 2006-2007.[1] In this adversary proceeding, he seeks a determination that these taxes are dischargeable under 11 U.S.C. § 523 and § 727 of the Bankruptcy Code.[2] Alternatively, in Count II of the Complaint, if the Court finds the debts to be nondischargeable, debtor seeks a determination of the value of the IRS's secured claim under § 506.[3]

---

[1] Doc. 1 at 3; Doc. No. 20 Exhibit 1 at 2 (Declaration of Revenue Officer D. Lawson (the "Lawson Declaration")).
[2] Doc. No. 1. All references to the Bankruptcy Code shall be to 11 U.S.C. § 101 *et seq*. Debtor's complaint seeks a determination of dischargeability for tax years 1997–2007, however the IRS has clarified debtor owes the IRS for unpaid federal income taxes for years 1997 and 2000–2004, and 2006–2007 only. Doc. No. 20 at 9. Debtor owes no tax liability for years 1998, 1999, or 2005. Doc. No. 11 at 2-3. Debtor owes outstanding taxes for years 2009–2010, but these taxes are not at issue in this proceeding because the debtor concedes they are not dischargeable pursuant to § 507(a)(8) of the Bankruptcy Code.
[3] Doc. No. 1 at 3.

The defendant United States of America Internal Revenue Service ("IRS") objects to the discharge of any of the overdue tax amounts and requests summary judgment in its favor on Count I arguing that debtor willfully attempted to evade or defeat the payment of his tax liabilities under § 523(a)(1)(C).[4] Because no material factual disputes exist regarding debtor's willful, knowing, and voluntary attempt to avoid payment of his tax obligations, the Court will grant the IRS's request for summary judgment. Debtor's taxes for the years in question are not dischargeable.

Debtor is a board certified and licensed pharmacist by trade.[5] He currently works as an independent contractor at various staffing agencies providing pharmacy, prescription, and counseling services.[6] His monthly income exceeds $10,000,[7] $8,800 of which is attributable to wages earned as a contract pharmacist, and an additional $1,775 comes from social security income.[8] Debtor's classification as an independent contractor prevents the IRS from withholding taxes from his compensation.[9]

In 2001, debtor married Catherine Unuigobje.[10] Together they have two children, and debtor also has two children from a previous marriage who do not live with him.[11] In 2005, debtor and his wife purchased a parcel of land in Sanford, Florida, with the intention of building a home on the property.[12] They took out a construction loan in the amount of $639,238 and started construction of the house.[13] In 2007, when the house (the "Sanford Home") was complete, debtor and his wife attempted get a permanent mortgage loan and repay the

---

[4] Doc. No. 20, Defendant's Motion for Summary Judgment.
[5] Doc. No. 20 at 2–3 and Exhibit 1 to Vanaskie Declaration (the "Obinwa Deposition") at 8.
[6] Obinwa Deposition at 7–8.
[7] *Id.* at 8-9.
[8] *Id.* at 39.
[9] *Id.* at 22.
[10] *Id.* at 14.
[11] *Id.* at 72.
[12] *Id.* at 106–107.
[13] The original construction loan was for $601,200. Obinwa and his wife later modified the construction loan to add an additional $38,038. Doc. No. 20 Exhibit 2 to Vanaskie Declaration (hereinafter "Unuigboje Deposition") at 38–40, 62.

construction loan. According to both debtor and his wife, because of debtor's poor credit, the new mortgage lender refused to refinance the property as long as debtor was listed as an owner on the title.[14] Referring to his poor credit, debtor acknowledged the IRS "had liens on [him] many times."[15] Therefore, allegedly to obtain the new mortgage, in April, 2007, debtor transferred by quit claim deed all his rights and interest in the Sanford Property to his wife.[16]

Debtor continues to pay the mortgage payments and household expenses of approximately $3,800 per month[17] because his wife does not make a substantial contribution to the family's finances.[18] Debtor also tithes a portion of his regular income to his church.[19]

Debtor and his wife always have filed separate tax returns and maintained separate bank accounts.[20] Although debtor has never failed to file a tax return, he filed late numerous times.[21] He admittedly has failed to pay his tax liabilities in full for the 1997, 2000-2004, and 2006-2007 tax years.[22]

In 2006, the IRS conducted an audit of debtor's 2004 tax return and increased his tax liability for several reasons. The IRS reclassified debtor's filing status from an improper "head of household" status to married filing separate.[23] The IRS also disallowed various deductions debtor claimed, including business expenses and charitable contributions that debtor could not substantiate. Yet, even after this audit when the debtor absolutely knew he was not entitled to file using a head of household status or to take impermissible deductions, debtor continued to file

---

[14] Obinwa Deposition at 106-108.
[15] Id. at 33.
[16] Id. at 108.
[17] Id. at 120.
[18] Unuigboje Deposition at 14–15.
[19] Obinwa Deposition at 33–34.
[20] Doc. No. 20 at 4.
[21] Debtor filed late tax returns in years 2000, 2002, and 2003. Lawson Declaration at 2.
[22] Obinwa Deposition at 15–16; Lawson Declaration at 2.
[23] Doc. No. 20 at 5-6; Doc. No. 20, Exhibit 1 (hereinafter "Vanaskie Declaration") at Exhibit 11.

as head of household for tax years 2006, 2007, and 2008, even though he was married at the time and even though he knew this was improper.[24]

The IRS also identified several other problems with debtor's other tax returns, including:

- Debtor's improper claim of Earned Income Credits for his sons from a prior marriage who do not live with him;

- Debtor's improper claim of deductions for the business use of his home, even though he only uses his wife's office to periodically check emails;

- Debtor's improper claim of real estate losses on three rental properties owned solely by his wife; and

- Debtor's improper claim of home mortgage interest deductions on the Sanford Home in his 2008 return, and his claim of mortgage interest as a business expense in 2009 and 2010, even though he is not obligated as a co-signer on the mortgage, and he transferred ownership of the home to his wife in 2007.[25]

As a result of his unpaid obligations, in 2008, the IRS filed a Notice of Federal Tax Lien against debtor in Seminole County, Florida for the 1997 and 2000-2004 tax years.[26] The tax lien did not attach to the home because debtor already had transferred it to his wife. Debtor has made some payments towards his outstanding tax liabilities, but the following taxes, penalties, and fees remain unpaid:[27]

---

[24] Doc. No. 20 at 7; Vanaskie Declaration Exhibits 7-8; Lawson Declaration Exhibits 5-6.
[25] Doc. No. 20 at 7-8 (citing Vanaskie and Lawson Declarations and various exhibits).
[26] Doc. No. 20 at 6; Lawson Declaration at 3.
[27] Doc. No. 1 at 5 (referring to Lawson Declaration Exhibits 5-6) (as of July, 2012).

| TAX YEAR | TAXES | PENALTIES | INTEREST |
|---|---|---|---|
| **1997** | $ 172,838 | $ 5,936 | $ 7,366 |
| **2000** | $ 18,999 | $ 1,180 | $ 218 |
| **2001** | $ 25,314 | $ 1,562 | $ 796 |
| **2002** | $ 30,215 | $ 16,560 | $ 1,206 |
| **2003** | $ 16,532 | $ 1,634 | $ 208 |
| **2004** | $ 6,285 | | |
| **2006** | $ 4,961 | $ 146 | $ 35 |
| **2007** | $ 6,732 | $ 94 | $ 21 |
| **TOTAL** | $ 281,876 | $ 27,112 | $ 9,849 |

In December 2004, debtor attempted to negotiate his outstanding liability with the IRS through an Offer in Compromise in which he agreed to pay $4,883 in full satisfaction of his debts.[28] The IRS rejected the offer but countered with a proposal to accept $35,691 to extinguish all debtor's outstanding tax debts. Debtor refused.[29]

On June 14, 2011, debtor filed for Chapter 7 bankruptcy.[30] He lists assets of $14,319, and liabilities of 239,088.[31] As expected, the IRS is debtor's largest creditor with a scheduled liability of $222,605.[32] Debtor does not claim the Sanford Home as an asset or list the mortgage company as a creditor, but he lists monthly mortgage payments, taxes, and home maintenance expenses of over $4,500.[33]

Debtor filed this adversary proceeding seeking a declaration that his outstanding tax liabilities, now totaling over $305,000, are dischargeable debts under § 523 and § 727 of the Code.[34] He argues he did not pay these taxes in full because he "didn't have the money" to pay

---

[28] Doc. No. 20 at 10, Offer in Compromise Lawson Declaration Exhibit 10.
[29] Obinwa Deposition at 86-87; Lawson Declaration Exhibit 12.
[30] Case No. 6:11-bk-8951-KSJ. This is not debtor's first bankruptcy. In 2001 debtor filed for Chapter 7 protection but was unable to discharge his outstanding tax liabilities at that time. Case No. 01-bk-17204-AJC7 (filed in the Southern District of Florida).
[31] Case No. 6:11-bk-8951-KSJ, Doc. No. 1 Summary of Schedules.
[32] *Id*. Schedule E.
[33] *Id.* Schedule J.
[34] Doc. No. 1.

when they came due.[35] He claims he knew of his obligation to pay taxes but has never filed a fraudulent return or attempted to evade assessment or payment of taxes.[36] He simply lacked the funds to pay the taxes.

The IRS responded to plaintiff's complaint by filing this motion for summary judgment as to Count I of the Complaint only seeking a declaration that debtor's outstanding tax liabilities are nondischargeable under § 523(a)(1)(C) because debtor willfully and purposefully attempted to avoid payment of his tax obligations.[37] The IRS argues Mr. Obinwa is not an honest but unfortunate debtor, but a taxpayer who has purposely manipulated his tax returns and obfuscated his finances specifically to avoid paying taxes to the IRS. These concerted efforts, the IRS argues, render Mr. Obinwa's tax liabilities nondischargeable under § 523(a)(1)(C).

### Debtor is Not Entitled to a Discharge of His Outstanding Tax Liabilities under § 523(a)(1)(C)

A debtor in Chapter 7 bankruptcy is generally granted a discharge of all pre-petition debts.[38] This "fresh start" is granted only to the "honest but unfortunate debtor."[39] Section 523(a)(1)(C) provides for an exception to discharge to ensure only those deserving of a discharge receive one. By prohibiting the discharge of tax obligations when a debtor fraudulently or willfully attempts to avoid paying taxes:

> (a) A discharge under § 727 … of this title does not discharge an individual debtor from any debt
> (1) For a tax or a customs duty –
>    (C) with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax.[40]

The nondischargeability provision in subsection (C) has two prongs: the conduct requirement (that the debtor "attempted in any manner to evade or defeat such tax"), and the mental state

---

[35] Obinwa Deposition at 16–17; 55.
[36] Doc. No. 1 at 2; Obinwa Deposition at 39.
[37] Doc. No. 20.
[38] 11 U.S.C. § 727(b). *In re Fretz*, 244 F.3d 1323, 1326 (11th Cir. 2001).
[39] *In re Fretz*, 244 F.3d at 1326 (citations omitted).
[40] 11 U.S.C. § 523(a)(1)(C).

requirement (that the debtor attempted to evade taxes "willfully").[41] The first prong focuses only on the debtor's actions and whether he acted, or failed to act, in a manner designed to evade or defeat tax liability.[42] A simple failure to pay tax obligations is not sufficient to satisfy the conduct requirement in § 523(a)(1)(C).[43] Instead, the IRS must prove more, that the taxpayer's nonpayment of taxes was an intentional and voluntary attempt to defeat tax collection.[44] Affirmative conduct can be demonstrated by affirmative acts of commission or acts of culpable omission.[45]

The second prong evaluates the debtor's mental state in his non-payment of taxes, which is satisfied by proving the acts of evasion were "willful," or made "voluntarily, consciously, or knowingly, and intentionally."[46] A showing of actual fraudulent intent is not required.[47] Willfulness can be demonstrated by proving (1) debtor had a duty to pay his taxes, (2) debtor *knew* of his obligation to pay taxes, and (3) the debtor voluntarily and intentionally violated that duty.[48] Here, debtor concedes he knew the amount of outstanding tax liability and his need to pay his taxes. He just argues he did not violate his duty to pay his taxes because he had no money.

Alternatively, a court may find willfulness where certain fact patterns, circumstantial evidence, or other "badges of fraud" indicate a debtor's intention to evade tax obligations.[49] These include (1) continually understating income or the combination of understating income

---

[41] *In re Fretz*, 244 F.3d at 1326 (citing *Fegeley*, 118 F.3d 979, 983 (3d Cir. 1997).
[42] *Id.* at 1327.
[43] *In re Haas*, 48 F.3d 1153, 1158-59 (11th Cir. 1995); *Griffith*, 206 F.3d 1389 (11th Cir. 2000).
[44] *In re Griffith*, 206 F.3d at 1393 (overruling *Haas* to the extent *Haas* held § 523(a)(1)(C) only applied to a fraudulent filing of tax returns, and not the evasion of a tax payment). *In re Haas*, 48 F.3d at 1159.
[45] *Fretz*, 244 F.3d at 1329.
[46] *Id.* at 1330 (*citing Griffith* 206 F.3d at 1396-97).
[47] *Id*.
[48] *Griffith*, 206 F.3d at 1396 (*citing In re Birkenstock*, 87 F.3d 47, 952 (7th Cir. 1996); *In re Brunner*, 55 F.3d 195, 197 (5th Cir. 1995)).
[49] *Id; In re Cole*, 328 B.R. 237, 241 ( Bankr. M.D. Fla. 2005) (citations omitted); *Rhodes v. United States of America (In re Rhodes)*, 356 B.R. 229, 236 (Bankr. M.D. Fla. 2006) (citing *United States v. Spiwak (In re Spiwak)*, 285 B.R. 744, 751 (S.D. Fla. 2002)).

and unexcused late returns;[50] (2) implausible or inconsistent explanations of behavior; (3) inadequate records to support tax filings;[51] (4) the transfer of assets for inadequate consideration while maintaining control of the property; (5) transfers reducing the assets subject to IRS execution; (6) transfers made in the face of financial difficulty;[52] or (7) the classification of employment as an independent contractor to avoid tax withholdings.[53]  The list is not exclusive, nor is any single factor determinative in proving willfulness.

Courts should examine the totality of circumstances to determine whether a debtor willfully attempted to evade or defeat tax liabilities under § 523.[54]  At one point in time, courts were only concerned a debtor's attempt to evade tax assessment,[55] but § 523(a)(1)(C) now "precludes the discharge when the debtor 'willfully attempted to evade or defeat' a tax at the payment stage, just as surely as it does where the attempted evasion occurs at the assessment stage."[56]

To obtain summary judgment, the IRS must demonstrate there are no genuine issues of material fact in dispute and it is entitled to a nondischargeability determination as a matter of law.[57]  To defeat this motion, debtor may not rely solely on the allegations or denials in his

---

[50] *See In re Cole*, 328 B.R. 237 (holding repeatedly understating income, together with unexcused late returns, constitutes willfulness under § 523(a)(1)(C)).
[51] *In re Griffith,* 206 F.3d at 1396; *In re Cole*, 328 B.R. at 241.
[52] *In re Rhodes*, 356 B.R. at 236 (citing *In re Spiwak*, 285 B.R. at 751).
[53] *In re Jacobs*, 490 F.3d 913, 917 (11th Cir. 2007).
[54] *In re Cole,* 328 B.R. at 242 (using the totality of circumstances test to conclude debtor willfully evaded her tax obligations); *In re Hassan*, 301 B.R. 614, 623 (S.D. Fla. 2003) (citing *In re Binkley*, 242 B.R. 728, 733 (M.D. Fla. 1999)) (same).
[55] *In re Haas,* 48 F.3d at 1159 (*overruled in party by Griffith,* 206 F.3d at 1396, *and Fretz,* 244 F.3d at 1329–30).
[56] *In re Fretz*, 244 F.3d at 1328 (*citing In re Griffith*, 206 F.3d at 1393, 1395–96)).
[57] Fed. R. Civ. P. 56; *Griffith*, 206 F.3d. at 1326. Under Federal Rule of Civil Procedure 56, made applicable by Federal Rule of Bankruptcy Procedure 7056, a court may grant summary judgment where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). The moving party has the burden of establishing the absence of a genuine issue of material fact. *Id*. If the movant succeeds in demonstrating the absence of a material issue of fact, the burden shifts to the non-moving party to show the existence of a genuine issue of fact. *Burger King Corp. v. E-Z Eating, 41 Corp.*, 572 F.3d 1306, 1313 (11th Cir. 2009) (citing *Celotex Corp. v. Catrett*, 477 U.S. at 322.

pleadings, but must set forth specific facts showing there are genuine issues for trial.[58] Conclusory allegations by either party, without specific evidence supporting facts, have no probative value.[59]

In its Motion for Summary Judgment, the IRS claims debtor tried to avoid assessment by manipulating his tax returns, and then tried to avoid collection by placing his assets beyond the reach of the IRS. There is no dispute debtor owes taxes and is aware of his duty to pay them.[60]

The overwhelming evidence presented by the IRS suggests debtor avoided assessment by making numerous egregious errors and omissions on his tax returns. He repeatedly ignored multiple notices from the IRS and continued to take deductions and exemptions to which he knew he was not entitled. Debtor filed as head of household *three times* after the IRS audited, and then adjusted his 2004 tax return because he was married and not entitled to claim the status.[61] He also took tax credits for which he was not qualified,[62] took improper interest deductions on a mortgage payment he was not even obligated to pay,[63] and incredibly took losses on rental property he did not own.[64] He has not presented any evidence to dispute the IRS's

---

[58] *Evers v. General Motors Corp.* 770 F.2d 984, 986 (11th Cir. 1985).
[59] *Id.*
[60] Doc. No. 1 at 2; Obinwa Deposition at 39.
[61] 26 U.S.C. § 2(b)(1) (An individual may file as head of household "if, and only if, such individual is not married at the close of his taxable year" and maintains a home serving as a principal place of abode for at least one dependent for more than half the year). The IRS audited debtor's 2004 tax return and in 2006 increased debtor's liability in part because he erroneously filed as head of household (instead of married filing separately). Lawson Declaration Exhibit 1; Doc. No. 20 at 5–6. Debtor continued to file as head of household in his 2006, 2007, and 2008 tax returns. Vanaskie Declaration Exhibits 7–8; Lawson Declaration Exhibits 5–6.
[62] A married individual filing separately is not entitled to an Earned Income Tax Credit. 26 U.S.C. § 32(d). Nor is a taxpayer entitled to an Earned Income Tax Credit for a child who does not live with taxpayer for more than one half of the year. 26 U.S.C. § 32(c)(3) & § 152(c).
[63] *Golder v. C. I. R.*, 604 F.2d 34, 35 (9th Cir. 1979) (noting "It has long been established that for interest to be deductible under section 163(a), the interest must be on the taxpayer's own indebtedness, not the indebtedness of another.") (citing *Nelson v. Commissioner*, 281 F.2d 1, 5 (5th Cir. 1960); *Rushing v. Commissioner*, 58 T.C. 996, 1000 (1972); *Eskimo Pie Corp. v. Commissioner*, 4 T.C. 669, 675-76 (1945), *Aff'd*, 153 F.2d 301 (3d Cir. 1946)).
[64] A debtor who does not file a joint return with his spouse is not entitled to passive real estate losses. *See* 26 U.S.C. § 469(i)(5)(B).

allegations, but instead argues he knows nothing about taxes and simply relied on his tax accountant to file on his behalf.[65]

The debtor cannot excuse his own actions by glibly relying on his accountant's advice in continuing to make egregious factual errors on his tax returns. As a taxpayer, debtor was required to review and to correct any errors in his returns, including basic factual information such as whether or not he was married, whether or not his children live with him, and whether or not he had an interest in property.[66] These are simple questions an educated person such as Mr. Obinwa can and should easily communicate to a tax preparer, just as he did in his deposition. Debtor cannot hide behind a shield of ignorance as to his obvious misstatements or misrepresentations contained in his tax returns.

Debtor also purposely attempted to avoid the IRS's collection of his outstanding taxes. Many courts have found the transfer of a debtor's home to his spouse for no consideration with knowledge of outstanding tax liabilities is indicia of a willful attempt to avoid an IRS lien.[67] As such, debtor's voluntarily transfer of his interest in his $600,000 home to his wife, with knowledge of his long overdue IRS obligations,[68] is strong evidence he willfully avoided the collection of taxes.

---

[65] Obinwa Deposition at 52–53 (Question: "You signed the return." Answer [Mr. Obinwa]: "Well, they say sign here and I sign. I don't know what all this means. You're a tax man, I'm not a tax man, so all those details mean something to you, but they don't mean anything to me."). *See also* Doc. No. 23 at 4 Plaintiff's Response and Memorandum to Defendant's Motion for Summary Judgment.

[66] *See* Internal Revenue Service Form 1040 "Sign Here: Under penalties of perjury, I declare that I have examined this return and accompanying schedules and statements, and to the best of my knowledge and belief, they are true, correct, and complete." Mr. Obinwa's signature appears on all tax returns under this provision. Doc. No. 20.

[67] *In re Jacobs*, 490 F.3d 913, 925–26 (noting that the transfer of Mr. Jacob's interest in the marital home to Mrs. Jacobs for no consideration, while continuing to make all the mortgage payments, qualifies as an affirmative act to evade or defeat taxes under § 523(a)(1)(C)); *In re Sternberg*, 229 B.R. 238, 248 (S.D. Fla. 1998) (same); *In re Griffith*, 206 F.3d at 1396 (holding transfers to debtor's wife and himself as tenants in the entirety, for no consideration, was a willful attempt to evade taxes); *Dalton v. I.R.S.*, 77 F.3d 1297, 1303 (10th Cir. 1996) (holding that transfer of property to his fiancé's account for insufficient consideration, with knowledge of a pending tax investigation, supported finding of willful attempt to evade or defeat taxes).

[68] Doc. No. 20 Exhibit 11 at 40, United States First Request For Admissions to Samson Obinwa.

Debtor argues the transfer was not an intentional attempt to avoid the IRS because it was made at the insistence of his lender, not him.[69] This same argument was made by the debtor in *In re Jacobs* and rejected.[70] Regardless of whose idea it was to transfer the asset, debtor and his wife both concede the transfer occurred as a result of debtor's poor credit arising from his knowing failure to pay his outstanding tax liabilities.[71] The purpose behind the transfer was to prevent the IRS from attaching tax liens to the property so that he and his wife could continue to live in the home.

Debtor's argument that there was no equity at the time of the transfer is irrelevant.[72] Similar to the debtor in *Jacobs,* Mr. Obinwa continues to pay all mortgage payments and live in the home without realizing the consequences of property ownership.[73] The Eleventh Circuit Court of Appeals held that, equity or not, transferring title while continuing to reap the benefits of ownership can constitute a willful attempt to avoid the collection of taxes.[74]

The characterization of debtor's earnings as independent contractor wages to avoid income tax withholding also strongly indicates an affirmative attempt to conceal assets from tax collection.[75] Mr. Obinwa claims he had no money to pay the taxes he owed the IRS, but provides no explanation why he chose not to withhold a portion of his six-figure salary or pay periodic estimated taxes so he would be prepared to pay taxes when they came due each year.  Instead of saving monies to meet his annual tax obligation, debtor chose to pay expenses he otherwise was

---

[69] Obinwa Deposition at 108.
[70] *See In re Jacobs*, 490 F.3d at 926 n.12 (noting the transfer of a home to a non-income producing spouse at the insistence of a lender to avoid the attachment of liens does not absolve a taxpayer of overdue tax obligations under § 523(a)(1)(C), even if it was the lender's suggestion).
[71] Obinwa Deposition at 108, Unuigboje Deposition at 46.
[72] Doc. No. 23 at 3.
[73] *In re Jacobs*, 490 F.3d at 916-918, 926 at n. 12 & 13.
[74] *Id*.
[75] *Id.* at 926 (causing law firm to characterize debtor's income as non-wage income thereby avoiding mandatory tax withholding, while enjoying the luxury "perks" of the firm and failing to pay estimated taxes, evidenced a willful attempt to avoid tax liabilities); *In re Fegeley,* 118 F.3d at 984 (changing the filing status to an independent contractor may be construed as a scheme to avoid paying taxes); *Landi v. United States*, 316 B.R. 363, 369-70 (M.D. Fla. 2004) (characterizing earnings as non-wage income without filing quarterly returns indicated an attempt to purposefully evade taxes).

not legally obligated to pay, such as the mortgage on the home he transferred to his wife. He also made charitable contributions of over $57,000 to his church.[76] No matter how laudable, a taxpayer is not permitted to fund discretionary expenditures, even charitable donations, by failing to pay his taxes.[77] The law is clear that taxpayers who have the money to pay their taxes must do so first.[78] Making discretionary expenditures instead of paying tax liabilities demonstrates a voluntary and intentional evasion that prevents the dischargeability of debt under § 523(a)(1)(C).[79]

Debtor's argument that his remaining tax obligations should be discharged because the IRS never filed fraud charges or prosecuted for tax evasion[80] also falls flat in light of *Griffith*, which found the debtor's outstanding tax obligations nondischargeable even though the IRS failed to meet the higher clear and convincing burden of proof to prove criminal fraud.[81]

Lastly, debtor seems to suggest that paying some of his outstanding tax obligations exhibits good faith and demonstrates he has not willfully attempted to evade paying taxes.[82] To the contrary, the Eleventh Circuit Court of Appeals rejected such an argument in *Jacobs,* noting that paying a portion of taxes does not justify discharging the remaining tax debt where, as here, other badges of fraud exist to support a denial of discharge under § 523(a)(1)(C).[83]

Mr. Obinwa enjoys a comfortable lifestyle. He makes a six-figure salary and lives in a $600,000 home, but nevertheless claims he did not have sufficient funds to pay his tax obligations when they came due. Although he claims he never intentionally avoided taxes, too

---

[76] Doc. No. 20 at 9, Vanaskie Declaration Exhibits 5-8; Lawson Declaration Exhibits 4-6.
[77] *In re Schwartz*, 2009 WL 361383 at *4 (Bankr. M.D. Fla. 2009) (finding the debtor's outstanding tax liabilities nondischargeable because debtor chose to pay for discretionary items such as expensive colleges, excess child support, and excess spousal support).
[78] *Id.* at 3.
[79] *In re Jacobs*, 490 F.3d at 926.
[80] Doc. No. 23 at 2–3.
[81] *In re Griffith* 206 F.3d at 1391 & n. 4.
[82] Doc. No. 23 at 3 (Debtor states "Never has Defendant investigated Plaintiff for fraud prior to the filing of this Adversary Proceeding.").
[83] *Jacobs* 490 F.3d at 917 (holding the debtor had willfully evaded paying taxes even though he had paid a portion of his obligations prior to filing bankruptcy).

many undisputed facts exist to make his innocence plausible.[84] A Court need not take seriously a debtor whose claims of innocence, or at best ignorance, are subsumed by repeated acts of evasion.[85] Considering the totality of the circumstances, there simply is no question debtor repeatedly and willfully underreported his taxable income.  Together with the multiple attempts taken to evade collection, not the least of which is making monthly mortgage payments on a house he does not own, the Court interprets debtor's conduct as willful evasion of taxes under § 523(a)(1)(C).  There are no material facts in dispute in this case.  Debtor has offered no support to rebut the IRS's evidence against him or to support his claim that the evasion was not willful.  Debtor's only argument that he blindly relied on his tax preparer is not a plausible defense. The IRS is entitled to summary judgment as a matter of law, and debtor's taxes for years 1997, 2000-2004, and 2006-2007 are excepted from discharge pursuant to § 523(a)(1)(C).

As to the amount of nondischargeable tax liability, the debtor owes $291,725 in taxes and interest.[86]  This amount is nondischargeable under § 523(a)(1)(C).  Penalties of $27,112 are dischargeable.[87]  A separate Partial Final Judgment consistent with this Memorandum Opinion shall be entered.

### The Value of the IRS's Secured Claim

In the event the Court determines debtor's tax liabilities not dischargeable, which she now has so concluded, debtor requests in Count II of his Complaint that the Court determine the amount of the IRS's secured claim under 11 U.S.C. § 506.[88]  The IRS does not seek summary judgment on Count II, but resists debtor's request.[89]  As such, the issue of the amount of the

---

[84] *See In re Sternberg*, 229 B.R. at 246 (noting "While a single badge of fraud may amount to only a suspicious circumstance, a combination of them will justify a finding of fraud.").
[85] *In re Griffith* 206 F.3d at 1396.
[86] This amount includes $181,876 in outstanding taxes, plus $9,849 in penalties.
[87] Doc. No. 1 at 3; Doc. No. 11 at 4.  The parties agree that penalties assessed more than three years before the filing of debtor's bankruptcy are dischargeable. Section 523(a)(7)(B) of the Bankruptcy Code
[88] Doc. No. 1 at 3–4.
[89] Doc. No. 11.

IRS's secured claim remains outstanding. A pre-trial conference on this remaining issue of the value of the IRS's secured claim under § 506 is scheduled for **December 13, 2012 at 11:00am**.

DONE AN ORDERED in Orlando, Florida on November 13, 2012.

_____
KAREN S. JENNEMANN
Chief United States Bankruptcy Judge